# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| MARY CLOWNEY AS GUARDIAN AD LITEM FOR SYVOLIA OWENS, | ) ) ) | C.A. NO. _____ |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | |
| HUNT VALLEY HOLDINGS, LLC A/K/A HUNT VALLEY HOLDINGS F/K/A FUNDAMENTAL LONG TERM CARE HOLDINGS, LLC; FUNDAMENTAL CLINICAL CONSULTING, LLC; FUNDAMENTAL CLINICAL AND OPERATIONAL SERVICES, LLC; FUNDAMENTAL ADMINISTRATIVE SERVICES, LLC; THI BALTIMORE, INC.; THI OF SOUTH CAROLINA, LLC; THI OF SOUTH CAROLINA AT MAGNOLIA PLACE AT GREENVILLE, LLC D/B/A MAGNOLIA PLACE OF GREENVILLE A/K/A MAGNOLIA PLACE-GREENVILLE, INC.; MURRAY FORMAN AND RUSTY FLATHMANN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) ) ) | |

## **NOTICE OF REMOVAL**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Fundamental Clinical and Operational Services, LLC ("FCOS") hereby removes the above-styled action to this Court from the Court of Common Pleas for the County of Greenville, South Carolina. In support thereof, Removing Defendant FCOS states as follows:

1.	Removing Defendant FCOS respectfully removes this action pursuant to 28 U.S.C. § 1441(a) because it is between citizens of different States and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a)(1).

2.	Plaintiff Mary Clowney, as Guardian Ad Litem for Sylvolia Owens, commenced this action on January 7, 2016 by filing a Complaint in the Court of Common Pleas for Greenville County, South Carolina, styled *Clowney v. Hunt Valley Holdings, LLC et al.*, C.A. No. 2016-CP-23-00079 ("State Court Action").  A copy of the docket sheet and all other documents on file with the Court of Common Pleas in the State Court Action are attached hereto as **Exhibit A**.

3.	While Defendant Rusty Flathmann ("Flathmann") was served on January 31, 2016, Defendants Hunt Valley Holdings, LLC ("Hunt Valley"), THI of Baltimore, Inc. ("Baltimore"), Fundamental Administrative Services, LLC ("FAS"), and Fundamental Clinical Consulting, LLC ("FCC") were served on February 2, 2016.  Each of these Defendants has appeared and responsively pled in the State Court Action.  However, Removing Defendant FCOS, along with Defendants THI of South Carolina at Magnolia Place at Greenville, LLC ("Facility") and THI of South Carolina, LLC ("THISC"), was served with process on February 18, 2015.  Accordingly, this notice of removal is timely.  *See* 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").  Upon information and belief, Defendant Murray Forman has not been served.

4.	All Defendants in the State Court Action have joined in this Notice of Removal, except Defendant Flathmann, who was fraudulently joined, as explained below.  *See* 28 U.S.C.

2

§ 1446(b)(2) (noting that only "defendants who have been properly joined and served must join in or consent to the removal of the action").

## I.    DIVERSITY OF CITIZENSHIP

### A.    Citizenship of Plaintiff

5.    Pursuant to 28 U.S.C. § 1332(a)(1), complete diversity of citizenship exists between the parties to the State Court Action.

6.    Upon information and belief, Plaintiff Mary Clowney is a citizen of the State of South Carolina. Furthermore, Ms. Clowney, in her capacity as the Guardian Ad Litem of Ms. Owens, must be deemed a citizen of the State of South Carolina because Ms. Owens, while a resident at the Facility, was a South Carolina citizen. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent."). Ms. Owens herself, at all times relevant to this Complaint, was a resident and citizen of the State of South Carolina.

### B.    Citizenship of Defendants

7.    Defendant Hunt Valley is a limited liability company that was organized under the laws of Delaware and which, prior to March 6, 2014, was named Fundamental Long Term Care Holdings, LLC. As a limited liability company, Hunt Valley's citizenship is determined by the citizenship of its members. *See Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004). Hunt Valley's sole member is Murray Forman, who is a citizen of the State of New York. Thus, Hunt Valley is a citizen of the State of New York.

8.    Defendant FAS is a Delaware limited liability company, the sole, non-managing member of which is Hunt Valley. Because Hunt Valley is a citizen of the State of New York, FAS also is a citizen of New York.

9. Defendant Baltimore is a Delaware corporation with its principal place of business in Maryland. Thus, Baltimore is a citizen of the States of Delaware and Maryland. *See* 28 U.S.C. § 1332(c)(1); *see also*, *Cent. W. Va. Energy Co. v. Mt. State Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011)(*citing Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186, 175 L. Ed. 2d 1029 (2010))("For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business. . . the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.")

10. Removing Defendant FCOS is a Delaware limited liability company, the sole, non-managing member of which is Defendant Baltimore. Thus, FCOS, like Baltimore, is a citizen of the States of Delaware and Maryland.

11. Defendant FCC is a Delaware limited liability company, the sole, non-managing member of which is Defendant Baltimore. Thus, FCC, like Baltimore, is a citizen of the States of Delaware and Maryland.

12. Defendant THISC is a Delaware limited liability company, the sole, non-managing member of which is Defendant Baltimore. Thus, THISC, like Baltimore, is a citizen of the States of Delaware and Maryland.

13. Defendant THI of South Carolina at Magnolia Manor-Inman ("Facility") is a Delaware limited liability company, the sole, non-managing member of which is Defendant THISC. Thus, the Facility, like THISC, is a citizen of the States of Delaware and Maryland.

14. Defendant Rusty Flathmann is a citizen of the State of South Carolina. As explained in Section III below, however, Defendant Flathmann was fraudulently joined to the State Court Action. His presence therefore is ignored for federal diversity jurisdiction purposes.

4

15.     Defendant Murray Forman is a citizen of the State of New York. As noted above, however, Defendant Forman has not been served with process.

## II. AMOUNT-IN-CONTROVERSY

16.     Plaintiff's Complaint asserts causes of action based on purportedly deficient care and treatment that Ms. Owens received during her residency at the Facility in March of 2012 (Compl. ¶¶13-21). Plaintiff contends that due to the purported negligence of all "Defendants," Ms. Owens "suffered a) injuries about her body, b) fractured hip and leg, c) bedsores, skin breakdown, and pressure ulcers, d) hospitalization" and other alleged damages such as pain and suffering and loss of enjoyment of life. (Compl. ¶ 24.)

17.     The Complaint contains six counts. Specifically, Plaintiff alleges claims against all Defendants for ordinary negligence (Compl. ¶¶ 25-27 (Count I)); negligence (Compl. ¶¶ 28-30 (Count II)); corporate negligence (Compl. ¶¶ 31-34 (Count III)); negligence per se (Compl. ¶¶ 35-38 (Count IV)); negligent misrepresentation (Compl. ¶¶ 39-44 (Count V)); and, civil conspiracy (Compl. ¶¶ 45-49 (Count VI)).

18.     Plaintiff seeks actual and punitive damages, and to recover his costs in pursuing the State Court Action. (Compl. ¶ 49.) Although the Complaint does not allege an amount-in-controversy, the value of this matter in dispute exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a). *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) ("[J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that . . . '[t]he matter in controversy exceeds, exclusive of interest and costs, the sum specified in 28 U.S.C. § 1332,' so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner." (internal citations omitted)); *Mattison v. Wal-Mart Stores, Inc.*, C.A. No.

5

6:10-cv-01739-JMC, 2011 WL 494395, at *2-3 (D.S.C. Feb. 4, 2011) (same, applying *Ellenburg*)

### III.  DEFENDANT FLATHMANN WAS FRAUDULENTLY JOINED TO THE STATE COURT ACTION

19.  The Complaint ¶ 10 names Rusty Flathmann as the only non-diverse Defendant in the State Court Action. Although Flathmann is a South Carolina citizen, he must be disregarded in assessing diversity of citizenship because Plaintiff fraudulently joined him to this lawsuit.

20.  A resident defendant is fraudulently joined where "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 264 (4th Cir. 2015) (per curiam) (citation omitted) (affirming denial of motion to remand where resident defendants were fraudulently joined because plaintiff failed to establish a right to relief against them). The fraudulent joinder doctrine "enables the court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id*. (internal quotation marks and citation omitted).

21.  In evaluating fraudulent joinder, a court *may*, but is not required to, "look beyond the complaint to determine the propriety of removal." *Flores v. Ethicon, Inc.*, 563 F. App'x 266, 269 (4th Cir. 2014). Where, as here, "a complaint is so inadequate and the record so entirely lacking in factual support that [the court] can only reasonably conclude that the non-diverse defendants were added to defeat jurisdiction, analysis of the entire record works an injustice on the removing party." *Id.*

22.  This is not the first time that the improper anti-removal strategy employed by Plaintiff—*i.e.,* suing a single, non-diverse individual as a defendant—has been invoked in a

6

nursing home negligence suit. This case is substantively indistinguishable from *Cranston v. Mariner Healthcare Mgt. Co.*, No. 3:03CV10-D-A, 2003 WL 21517999 (N.D. Miss. June 18, 2003), where an individual defendant was fraudulently joined to defeat removal. *Cranston* noted that "it is axiomatic that where a plaintiff's complaint is devoid of any factual allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated." *Id.* at 3. "Failure to specify a factual basis for recovery against a nondiverse party, therefore, constitutes a fraudulent joinder of that party." *Id.* In an excerpt that could have been written with this case in mind, the *Cranston* court explained:

> [T]he Plaintiffs merely allege, in very general and conclusory terms, that the Defendants collectively engaged in tortious conduct. There are no specific factual allegations in the complaint concerning the individual [non-diverse defendant's] participation in any of the alleged tortious acts, much less any factual allegations that would tend to suggest that her involvement was anything other than peripheral. Instead, the Plaintiffs simply allege in very general terms that the Defendants, as a group, will face liability for their actions. Nowhere in the complaint do the Plaintiffs allege how [the non-diverse defendant] directly participated in or authorized the commission of a tort, or how [her] alleged liability is based on her own individual wrongdoing; instead, the Plaintiffs merely use boilerplate language that collectively implicates the Defendants. As the court has already explained, hypothetical allegations of this sort are plainly deficient.
>
> Accordingly, without a factual basis for concluding that [the non-diverse defendant] directly, personally, or actively participated in any alleged tortious conduct, the court finds that the Plaintiffs have no possibility of establishing a cause of action against [the non-diverse defendant] in state court, and that she was therefore fraudulently joined to defeat diversity.

*Id.* at *3-4 (internal citation omitted).

23. Like *Cranston*, Plaintiff's Complaint—seemingly a form document that Plaintiff's counsel uses in suing nursing homes in other cases and which consists of a vague laundry list of anything a nursing home possibly could do wrong—is devoid of facts showing that Defendant Flathmann committed any wrongdoing. The only paragraph in the Complaint that specifically addresses Defendant Flathmann is Paragraph 10, which, in three generic

7

sentences, merely identifies him as a potential "agent, servant, or employee" of one or more of six named Defendants who was also serving as the "member and/or head of the governing body" of the Facility.  Plaintiff's Complaint then summarily concludes that Flathmann was thereby "charged by law with certain management and operational responsibilities."  To be sure, these "certain management and operational responsibilities" are not enumerated or identified in any fashion and the laws which purportedly charge Flathmann with these responsibilities are also noticeably absent.  Moreover, the Complaint does not further specify Flathmann's affiliation with any of the potential six Defendants (much less the Plaintiff, Ms. Owens, or the care rendered) but does subsequently assert that Flathmann was also "Regional Director of Operations" for "one of more of the Defendants." Beyond that introduction, *every substantive allegation that follows* is attributed to all (or a subset of) "Defendants" collectively, without ascribing any specific act or omission to Defendant Flathmann.  Indeed, the Complaint provides no further detail whatsoever as to how Flathmann might plausibility have breached these amorphous "responsibilities" which are never articulated and how such a breach caused the Plaintiff harm.

24.     The United States Court of Appeals for the Fourth Circuit and other courts have recognized that this is precisely what the fraudulent joinder doctrine forbids. *See, e.g., Flores*, 563 F. App'x at 269 (finding fraudulent joinder where complaint directed allegations to "all of the defendants, diverse and non-diverse," but "contain[ed] no allegations of specific actions by the [non-diverse] defendants"); *Johnson v. GranCare, LLC*, Case No. 15-cv-03585-RS, 2015 WL 6865876, at *3 (N.D. Cal. Nov. 9, 2015) (facility administrator was improperly joined because, apart from an introductory paragraph in the complaint, "virtually every sentence that follows is addressed to *all* defendants collectively—none are directed specifically at [the

8

administrator]"); *Donald v. Arrowood Indem. Co.*, Civil Action No. 2:10cv227KS-MTP, 2010 WL 4853290, at *7 (S.D. Miss. Nov. 23, 2010) ("The focus of this [fraudulent joinder] inquiry must be on the factual allegations specific to [the non-diverse defendant]; [plaintiff] cannot rely upon the numerous, collective allegations of 'Defendants'' wrongdoing."); *Shah v. Wyeth Pharm., Inc.*, No. CV 04-8652 DT (MANx), 2005 WL 6731641, at *3 (C.D. Cal. Jan. 18, 2005) ("[A]llegations against 'Defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity' on the part of each of the non-diverse defendants."); *Banger v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) ("The Complaint consists only of conclusory and generic allegations of wrongdoing on the part of all the Defendants.  Such allegations are not sufficient to show that [the facility's administrator] was not fraudulently joined.").  For this reason alone, there is no possibility that Plaintiff's Complaint could state a valid claim against Defendant Flathmann in state court.  *See DeBerry v. McCain*, 275 S.C. 569, 574-75, 274 S.E.2d 293, 296 (S.C. 1981) (plaintiff could not state a claim because "[t]he complaint [] contains no independent allegations of any acts or omissions by [the defendants]").

25.     Defendant Flathmann is named in all six counts in the Complaint, which are directed to all "Defendants," indiscriminately.  Plaintiff, however, does not come close to pleading a claim—nor could he do so—against Defendant Flathmann under any of these counts. We address each cause of action below.

### A.     Negligence (Count I)

26.     Count I of the Complaint avers that all "Defendants" are liable for ordinary negligence.  (Compl. ¶¶ 25-27.)  To state a cause of action for negligence under South Carolina law, "the plaintiff must allege facts which demonstrate: (1) a duty of care owed by the defendant;

9

(2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty." *Savannah Bank, N.A. v. Stalliard*, 400 S.C. 246, 251, 734, S.E.2d 161, 163-64 (S.C. 2012).

27.    Plaintiff's Complaint does not plead these elements.  *First*, the Complaint does not establish that Defendant Flathmann owed a duty of care to Ms. Owens.  The Complaint merely claims that, because Defendant Flathmann was a member of the Facility's governing body, he was "charged by law with certain management and operational responsibilities."  No further allegations of the imposition of any duty are alleged nor could they be because service on the governing body furnishes no such duty.  Presumably, Plaintiff's vague assertions of "responsibility" refer to 42 C.F.R. § 483.75(d).  § 483.75(d), entitled "Governing Body," provides:

> (1)    *The facility* must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility; and
>
> (2)    The governing body appoints the administrator who is—(i) Licensed by the State where licensing is required; and (ii) Responsible for management of the facility.  [Emphasis added.]

28.    By its terms, this regulation imposes no duty of care on Defendant Flathmann or any other member of the Facility's governing body regarding the Facility's care and treatment of residents.  Section 483.75(d) does not even mention resident care, much less impose a legal duty or otherwise create a private right of action that makes governing-body members *personally* liable for the Facility's allegedly substandard care.  Section 483.75(d) merely is a requirement applicable only to *nursing homes to qualify for participation in the Medicare and Medicaid programs* and is not applicable to the nursing home industry at large.  *See* 42 C.F.R. § 483.1(b) (explaining that the regulations, including Section 483.75(d), in Part 483 "contain the

requirements that an institution must meet in order to qualify to participate as a [skilled nursing facility] in the Medicare program, and as a nursing facility in the Medicaid program. They serve as the basis for survey activities for the purpose of determining whether a facility meets the requirements for participation in Medicare and Medicaid.").

29. Furthermore, courts throughout the country have examined this issue and found no duty in tort is created by § 483.75(d) against a governing body member. *See, e.g., Racher v. Westlake Nursing Home Ltd. Partnership*, No. CIV-13-364-M, 2015 WL 411210, at 2 (W.D. Okla. Jan. 29, 2015) ("42 C.F.R. § 483.75(d)[] does not impose [] a legal duty for purposes of holding [a member of the governing body] liable for negligence"); *Bedell v. Williams*, 2012 Ark. 75, 386 S.W.3d 493 (dismissing governing body member and noting that "it is clear to this court that this regulation is a rule that nursing homes must follow to qualify for participation in medicare and medicaid, and we will not interpret it to create a duty in tort."); *cf. Salley v. Heartland-Charleston of Hanahan, SC, LLC*, Civil No. 2:10-cv-00791, 2011 WL 2728051, at 4 (D.S.C. July 22, 2011) (concluding that Section 483.10 creates no private right of action); *see also*, *Satterwhite v. Reilly*, 817 So.2d 407 (La. App. 2002)(dismissing claims against a medical director of a nursing facility and noting that "[n]othing in the regulation sets forth a standard of care for medical directors; the purpose is plainly to qualify providers for the Medicare and Medicaid programs); *Duncan v. Johnson-Mathers Health Care*, Inc., 2010 WL 3000718 (E.D. Ky July 28, 2010);

30. In addition, the Complaint does not plead facts showing that Defendant Flathmann owed any other duty (because none exists) to Ms. Owens that could support Plaintiff's negligence claim against him.

31.     *Second*, even if Plaintiff could establish that Defendant Flathmann had a legal duty, the Complaint alleges nothing factually demonstrating how he purportedly breached such a duty or caused Ms. Owens' claimed injuries.  Indeed, an examination of the failures enumerated in Count I as alleged breaches all deal with patient care and clinical responsibility.  To be sure, these alleged breaches have no bearing on Mr. Flathmann or his alleged role on the governing body.  Accordingly, there is no possibility that Plaintiff could prevail on his ordinary negligence claim against Defendant Flathmann in state court.

        **B.**     **Negligence (Count II)**

32.     Without making any meaningful distinction from his first claim, Plaintiff's second cause of action alleges "negligence" as opposed to the "ordinary negligence" examined above.  To the extent this second "negligence" cause of action sounds in professional negligence or some other negligence theory (which the Complaint fails to even suggest), it similarly fails to plead the existence of a duty in tort as set forth above.  Plaintiff cannot state a valid claim of negligence against Defendant Flathmann by merely alleging he was "charged by law with certain management and operational responsibilities."  These supposed "management and operational responsibilities" have been examined above and they do not create a duty in tort as a matter of law.  No other duty is alleged.

33.     Defendant Rusty Flathmann again is not directly identified in these assertions and Plaintiff's allegations of breach do not reference any action or inaction by Flathmann whatsoever as they primarily concern the clinical treatment of Ms. Owens which cannot be applicable to Flathmann, whom Plaintiff concedes provided no care to Ms. Owens and was not employed by the Facility.

### C.     Corporate Negligence (Count III)

34. Count III of the Complaint avers that all "Defendants" are liable on a theory of corporate negligence. (Compl. ¶¶ 31-34 ). "Corporate negligence, which literally means holding a *corporation* liable for its negligence acts, is a form of direct liability." *Simmons v. Tuomey Reg'l Med. Ctr.*, 330 S.C. 115, 123, 498 S.E.2d 408, 412 (S.C. Ct. App. 1998) (emphasis added). Under a corporate negligence theory, "direct corporate liability attaches due to a breach of a duty which runs directly between a parent company and a patient . . ." *Morrow v. Fundamental Long-Term Care Holdings, LLC*, 412 S.C. 534, 538, 773 S.E.2d 144, 146 (S.C. 2015).

35. Plaintiff has no corporate negligence right of action against Defendant Flathmann because he is an individual, not a corporation or other business entity to which a corporate negligence claim could apply. Even if corporate negligence could be asserted against an individual, Plaintiff's Complaint pleads no independent factual allegations addressed to Defendant Flathmann which establishes that he had a non-delegable (or any other) duty of care, that he committed any act or omission that breached any such duty, or that he did anything to cause Ms. Owens' claimed injuries. Accordingly, there is no possibility that Plaintiff's Complaint could state a valid claim for corporate negligence against Defendant Flathmann in state court.

### D.     Negligence Per Se (Count IV)

36. Count IV of the Complaint avers that all "Defendants" are liable under a theory of negligence per se. (Compl. ¶¶35-38.) "Negligence per se is negligence arising from a defendant's violation of a statute." *Wogan v. Kunze*, 366 S.C. 583, 623 S.E.2d 107, 117–18 (Ct.App. 2005). A statute must permit a private cause of action in order for plaintiffs to maintain a civil suit. "In determining whether a statute creates a private cause of action [in South

Carolina], the main factor is legislative intent." *Doe v. Marion*, 373 S.C. 390, 645 S.E.2d 245, 248 (S.C.2007) (finding that the statute for reporting child abuse does not support a private cause of action for negligence per se against a doctor). Plaintiff lists five sets of statutes and regulations by which the collective "Defendants" could be liable. However, not one single provision of any statute or regulation is specifically cited or referenced. Rather, Plaintiff generically refers to the entire legislative act and/or regulatory enactment globally without discerning which provision was violated and by which Defendant.

37.     *First*, none of the statutes or regulations cited by Plaintiff is applicable to Defendant Flathmann individually or as a member of the governing body of the Facility, the sole fact which Plaintiff has alleged renders him liable in this Complaint. *Second,* only one of the statutory or regulatory acts referenced by Plaintiff actually provides for a private right of action. *Third*, even if a private cause of action were permitted and these cited provisions were somehow applicable to Flathmann, Plaintiff's Complaint fails to allege any specific section of either statute that was breached, how the breaches occurred, or how the breaches proximately caused Ms. Owens' alleged injuries.

38.     The first statute referenced is the "Adult Protection Act" set forth in S.C. Code Ann. § 43-35-10, *et. seq.* The Act defines "neglect" to mean "the failure or omission of a *caregiver* to provide the care, goods, or services necessary to maintain the health or safety of a vulnerable adult including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, and the failure or omission has caused, or presents a substantial risk of causing, physical or mental injury to the vulnerable adult." S.C. Code § 43-35-10(6) (emphasis added).

39.     In addition, the Act defines "caregiver" to mean "a person who provides care to a vulnerable adult, with or without compensation, on a temporary or permanent or full or part-time

14

basis and includes, but is not limited to, a relative, household member, day care personnel, adult foster home sponsor, and personnel of a public or private institution or facility." S.C. Code § 43-35-10(2).

40.     It is impossible for Plaintiff to state a claim against Defendant Flathmann under the Act because the Complaint does not specifically allege, or plead any facts from which to infer, that he "provide[d] care" to Ms. Owens or otherwise was her "caregiver."  Moreover, the Complaint pleads no facts establishing that Defendant Flathmann *himself* (as opposed to all "Defendants") did or failed to do anything to "neglect" Ms. Owens under the Act.  In short, there is no possibility that Plaintiff could prevail in stating a cause of action in state court against Defendant Flathmann under this count of the Complaint.

41.     The second statute referenced is the "Bill of Rights of Residents of Long Term Care Facilities" set forth in S.C. Code Ann. § 44-81-10.  This Act establishes certain enumerated responsibilities which are expressly applicable only to <u>*long term care facilities*</u>, which even Plaintiff's Complaint cannot possibly assert against Defendant Flathmann.  These provisions have no plausible relationship to Defendant Flathmann and while Plaintiff's Complaint suggests that this Defendant might be employed by no less than six of the named Defendant to this action, the Facility that actually provided care to Ms. Owens is not among them.

42.     Furthermore, § 44-81-10 does not create a private cause of action. "The search for the legislative intent [in South Carolina] comports with the standards used for testing federal rights of action as expressed by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)." *Williams–Garrett v. Murphy*, 106 F.Supp.2d 834, 842 (D.S.C.2000). Courts determining whether federal statutes grant a private cause of action "begin with the presumption that if a statute does not expressly create a private cause of action, one does not exist." *Ormet*

*Corp. v. Oh. Power Co.*, 98 F.3d 799, 805 (4th Cir.1996).  There is no provision within the confines of § 44-81-10, *et. seq.* which could plausibly authorize a private cause of action.  To be sure, no court has ever found such a cause of action to exist.

43.     The third regulation referenced is that set forth in S.C. Reg. 61-17.  Although there are a multitude of reasons why this claim fails as a matter of law as to Defendant Flathmann, the South Carolina District Court has expressly held that this regulation does not create a private cause of action.  *See Salley* 2011 WL 2728051 at 4 ("Plaintiffs' negligence per se claim under S.C. Reg. 61–7 also fails because the regulation does not provide for a private cause of action.")  As such, it cannot be construed as a valid claim against Defendant Flathmann.

44.     The fourth reference by Plaintiff is to those federal regulations referenced above which are set forth at 42 C.F.R. § 483.75.  As previously noted, no valid claim exists against Flathmann under these regulations.  *See* ¶¶'s 27-31 above.

45.     Lastly, Plaintiff also makes reference to the Federal Nursing Home Reform Act ("FNHRA").  Although there are a multitude of reasons why this claim fails as a matter of law as to Defendant Flathmann, the South Carolina District Court has also expressly held that this regulation does not create a private cause of action.  *Id.* at 4 ("This court joins the vast majority of the courts in finding that the language of the FNHRA fails to demonstrate an express or implicit legislative intent to create a private cause of action.")  As such, Plaintiff's negligence per se claim is invalid against Defendant Flathmann and evidences his fraudulent joinder to the state court case.

### E.     Negligent Misrepresentation (Count V)

46.     Count V of the Complaint avers that all "Defendants" are liable under a theory of negligent misrepresentation.  (Compl. ¶¶ 39-44.)  Under South Carolina law, pleading a tort of

16

negligent misrepresentation requires the following showing: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *See AMA Management Corp. v. Strasburger,* 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct.App.1992); *See also, Winburn v. Insurance Co. of N. Am.,* 287 S.C. 435, 339 S.E.2d 142 (Ct.App.1985).

47. Plaintiff's Complaint attempts to plead a claim for negligent misrepresentation against Flathmann by conflating him and eight other Defendants without making any distinction between them. Indeed, the Complaint alleges no facts showing that Defendant Flathmann *himself* communicated with Ms. Owens or her family at any time or in any manner. Instead, these allegations are directed only to "Defendants" indiscriminately, which is insufficient to preclude application of the fraudulent joinder doctrine. *See Johnson*, 2015 WL 6865876, at 4 (reaching the same conclusion under California law in finding that a non-diverse defendant was fraudulently joined). Plaintiff's claim for negligent misrepresentation is nothing more than a mere recitation of elements that fails to articulate the time when these communications were made, who made them, and how they were delivered. Accordingly, there is no possibility that Plaintiff's Complaint could successfully state a negligent misrepresentation claim against Defendant Flathmann in state court.

### F.     Civil Conspiracy (Count VI)

48. Count VI of the Complaint avers that all "Defendants" are liable under a theory of civil conspiracy. (Compl. ¶¶45-49.) Under South Carolina law, a cause of action for civil

17

conspiracy is defined as "(1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." *Vaught v. Waites,* 300 S.C. 201, 387 S.E.2d 91, 95 (1989) (citing *Lee v. Chesterfield Gen. Hosp. Inc.,* 289 S.C. 6, 344 S.E.2d 379 (1986)).

49.     Our courts have long held that special damages are narrowly defined to be those damages which are alleged to be a result solely of the conspiracy itself.  As a result, pleading special damages requires that the plaintiff shows that the damages alleged are not simply those overlapping or subsumed with other causes of action.  *Hackworth v. Greywood at Hammett, LLC,* 385 S.C. 110, 115, 682 S.E.2d 871, 874 (Ct. App. 2009)("because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action.")(*quoting Vaught v. Waites*, 300 S.C. 201, 209, 387 S.E.2d 91, 95 (Ct. App. 1989). Plaintiff's Complaint fails to even raise, much less plausibly articulate, the existence of such special damages thereby making a claim for civil conspiracy against Flathmann a literal impossibility.  Rather, Plaintiff's conspiracy claims simply list damages and injuries which are either explicitly listed in the Complaint for other claims or which, by their very nature, cannot be deemed unique to Plaintiff's conspiracy claim as a matter of law.  Indeed, Plaintiff enumerates damages for this claim such as "injuries to her body," "pain," "suffering," "infection," "compromise to mental status," and "loss of dignity." These alleged injuries most certainly all arise from the negligence claims and Plaintiff's assertions to the contrary are patently absurd and outrageous.  Plaintiff cannot legitimately plead such damages against Defendant Flathmann (or any Defendant for that matter) because they do not exist.

50. In short, as in *Flores* and other cases cited above, Plaintiff's Complaint does not—and cannot—state a valid claim against Defendant Flathmann because the Complaint simply fails to allege that he had a legal duty of care or committed any wrongful conduct whatsoever. Accordingly, Defendant Flathmann must be disregarded for federal diversity jurisdiction purposes, and dismissed from this case.

51. As required by 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, Removing Defendant FCOS will give written notice thereof to Plaintiff in the form attached as **Exhibit B**, which will be filed in the Court of Common Pleas for Greenville County, South Carolina.

Respectfully submitted,

YOUNG CLEMENT RIVERS, LLP

By: *s/ D. Jay Davis, Jr.*
D. Jay Davis, Jr. Federal I.D. #: 6723
Perry M. Buckner, IV  Federal I.D. #: 11298
P.O. Box 993, Charleston, SC  29402
(843) 720-5415; jdavis@ycrlaw.com
pbuckner@ycrlaw.com
Attorneys for the Defendant Fundamental Clinical and Operational Services, LLC

Charleston, South Carolina

Dated: March 18, 2016